Dubtkin, Ch.
delivered the opinion of the Court.
The only question presented by this appeal is, whether the grants to Robert Goodloe Harper and James Booth Thompson, *260 took effect from their date in 1793, or from their delivery to Hugh McBurney and wife, under the Act of 1817. This precise question was determined by the Constitutional Court in 1821, at Charleston, in the case of Hugh McBurney vs. Alfred Walter, (a) It was there ruled, that the grants took effect from the date — that under the law, the Governor, after the great seal was affixed, “ was empowered and directed to sign the same, and thereupon deliver them to the Secretary of State to *261 be delivered to the respective grantees, or their order.” “The grant then,” (concludes the Court) “ after having been signed and sealed, was delivered to the Secretary to be delivered to the respective grantees, and such delivery is as valid in law as if made to the grantee himself.”
This decision was recognized and re-affirmed by the Court of Appeals at Charleston, in April, 1828, in the case of Simon Verdier vs. Hugh McBurney. (b)
*262 Neither of these decisions has been reported; and the want of acquaintance with them has probably occasioned subsequent misapprehension, and given rise to this appeal.
The motion to reverse the order of the Chancellor is dis-tiiissed.
Johnston, Dargan and Wardlaw, CC. concurred.

Appeal dismissed.

 Hugh McBurney vs. Alfred Walter. This was an action of trespass to try tille. The plaintiff derived, title under a grant to Robert Goodloe Harper and James Booth Thompson, dated in 1793; and which had been delivered to the plaintiff and his wife, under the Act of 1817. The defendant claimed by adverse possession anterior to 1817. Verdict for plaintiff and appeal by defendant.
January, 1821. Colcock, J. A motion fora new trial is moved for on seven grounds: but as the Court have determined the case on a single point, it is unnecessary to state them all. The Judge, in his charge to the jury, gave it as his opinion that the grant did not take effect until the year, 1817, when it was delivered to the plaintiff by virtue of the Ac.t of the Legislature, and this, it is contended, precluded the jury from considering the evidence of possession (offered by defendant) anterior to that time: — whereas, the grant ought to be considered as taking effect from the year 1793.
It was contended, on the part of the defendant, that the grant could not enure to the benefit of the grantees in 1793, because there was a condition precedent to be performed by them, viz: — paying ten dollars per hundred into the Treasury and the fees of office. That the grant had been withheld by the Secretary of State on these grounds, and that, therefore, there was no delivery until the year 1817, when the Legislature directed die Secretary to deliver it. In point of fact, there is no foundation for such argument, for there was no evidence that the grant was withheld from the grantees, consequently, no evidence of any reasons for withholding it; nor are any stated in the Act of 1817, and upon a reference to the Acts of the Legislature on the subject of granting lands, it will appear, that in the year 1793 there was no Bounty money (as it has been called commonly) required by the Legislature; nor do they make the payment of the fees a condition precedent to the completion of the grant. The first clause of the Act of 1791, repeals the Acts or clauses of Acts requiring money to be paid by the grantees, and declares that all vacant land shall be granted to any citizens applying for the same, on paying the fees of office. 2 Rrev. Dig. 8 §33.
This grant was made in 1793, more than two years after the passing of the Act; but it is said the clause speaks of vacant land, and this land had been surveyed in the year 17 — , for James Thompson, the elder, and is called appropriated land: but there is no such distinction recognized in any of the Acts upon the subject of granting lands, except for the period of six months, after the expiration of that time from the time of the survey.
The land is considered as vacant land by the 22d section of the Act of 1785, 2 Brev. Dig. 6. The first Act directing the mode of granting land in this State, passed in 1785, enacted “ that any person malting a survey of land, shall be allowed six months from the time of survey to obtain a grant, and, in default of obtaining the grant within that time, any person may, at the expiration thereof, apply for and obtain the grant for the said land on paying for it, and any grant obtained for land within six months from the time of its being surveyed, (except by the person for whom it is surveyed) shall be ipso fado null and void.” Here the period of six months from the time of survey had elapsed. Any person, then, according to the provision of the Act, might either obtain a grant on the first survey, or again run the *261 land and take out a grant. This land, then, in 1793, was, to all intents and purposes, vacant land. As to the delivery of the grant, that was also complete, for by the seventh section of the same Act, (2 Brev. Dig. 31 the mode of preparing and completing the grant is pointed out. The Surveyor General is required, on the return of entry and plat from the office of the Commissioner of Locations, to make out a plat, record and certify it; and then transmit it to the Secretary of State, who is required to make out the grant, affix the great seal to it, and within a given time, and on particular days, lay before his Excellency, the Governor for the time being, all such grants by him prepared as aforesaid, who is empowered and directed to sign the same, and thereupon deliver them to the Secretary of State to be delivered to the respective grantees or their order.
The grant then, after having been signed and sealed, was delivered to the Secretary of State, to be delivered to the grantees; and such a delivery is as valid, in law as if made to the grantee himself.
The Court, then, being of opinion that the grant must be considered as taking effect from its date; and conceiving, that the expression of a contrary opinion, by the presiding Judge, may have induced the jury not to consider the evidence offered by the defendant of his possession anterior to 1817; — grant the motion for a new trial.
Bay, Nott and Johnson, JJ. concurred. Gantt, J. dissented.

 Simon Verdier et al vs. Hugh McBurney and wife. In the Court of Ap-?eals, 2d April, 1828, Johnson, J. It is conceded on all sides, that on the death of ames Booth Thompson, without issue, his estate, in whatever it may have consisted, was, after the payment of his debts, distributable equally between his widow (the defendant, Mrs. McBurney) and his father, James Thompson; and that the complainants representing the heirs of the father, since deceased, are entitled to distribution of whatever may remain, and the object of the bill is for an account and distribution, so that the principal difficulty in the case consists in ascertaining what remains for distribution.
One enquiiy is as to what real estate James Booth Thompson was possessed of at the time of his death.
The complainants claim title for him to the several tracts of land granted to him and R. G. Harper, jointly, in 1793, and in which Harper had released to him all his interest. The grants to these lands, it seems, were regularly made out and signed by the proper officers, but were not taken out of the office by J. B. Thompson in his lifetime, and, for some reason that does not now appear, they were withheld from Dr. McBurney, who married his widow, and in'her right became administrator of the estate, until 1817, when an Act was passed directing their delivery to him in trust for the heirs of James B. Thompson.
The present village of Walterborough is situated on one of these tracts, which, it is said, contained one thousand acres, and in this the defendants deny the complainant’s right to partition, and claim title in the defendant, Dr. Burney, under a purchase made at sheriff’s sale for twelve hundred dollars, under fi. fa. issued against the de *262 fendants as administrator and administratrix of James B. Thompson, at the suit of William Robertson, for the sum of forty-nine dollars.
The complainants resist this claim, on the grounds,
First. That the grants having remained in the office, nothing passed under them until they were ordered to be delivered by the Act of 1817, and that McBurney could hold only upon the terms of that Act, viz: for the benefit of the heirs of James B. Thompson; and, consequently, that they were not liable to be taken in execution for. debts due by him.
This question was solemnly settled by the Constitutional Court (Judge Gantt dissenting) m the case of McBuruey vs. Walter, decided at January Sittings, 1821, but which, by some accident, appears not to have been published. That was an action to try the title to the tract on which Walterborougliis situated, and the question arose whether James B. Thompson took under the grant and from the date, or his heirs under the Act of 1817, and it was ruled that James B. Thompson had title from the date of the grant, and must be regarded as decisive of this question.
( Other questions were considered, and it was ruled that the sheriff’s sale to Dr. Burney was void for actual fraud.)
Nott and Colcock, JJ. concurred.